UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JOSHUA CHAMPION,<br><br>Plaintiff,<br><br>v.<br><br>SENDWELL INC.,<br><br>Defendant. | Civil Action No. 24-1143 (JEB) |

**MEMORANDUM OPINION**

Plaintiff Joshua Champion aptly initiated suit in this case with a reference to the Supreme Court's latest *bon mot* on telemarketers: "Americans passionately disagree about many things. But they are largely united in their disdain for robocalls." ECF No. 1 (Compl.), ¶ 1 (quoting Barr v. Am. Ass'n of Pol. Consultants, Inc., 591 U.S. 610, 613 (2020)). Champion shares that disdain. He brought this Telephone Consumer Protection Act class-action suit against Sendwell Inc. alleging that Sendwell is responsible for a barrage of unwanted text messages encouraging him and others to purchase various goods. Sendwell now responds by moving to dismiss for lack of standing. As Champion meets all the requirements of Article III standing, the Court will deny the Motion.

**I.      Background**

According to his Complaint — which the Court treats as true for the purposes of this Motion to Dismiss — Champion is registered on a national do-not-call list, which makes soliciting him by phone unlawful under the TCPA. See Compl., ¶¶ 11, 22; 47 U.S.C. § 227(c)(3)(F); 47 C.F.R. § 64.1200(c)(2). Even so, he has not escaped the telemarketer's reach.

1

Between April 20 and May 11, 2020, Champion received 31 unwanted text messages from Sendwell soliciting him to purchase products ranging from infrared thermometers to brain-power supplements. See Compl., ¶ 12. Each text contained a brief message prompting him to click on a URL that led to a webpage where different products were offered for sale. Id. To make matters worse, each message came from a different phone number, thus preventing Champion from discovering who was behind the spam texts and from blocking the barrage. Id., ¶¶ 19, 21. The text messages were a nuisance and annoyance to Plaintiff, and he claims that his privacy has been invaded. Id., ¶ 20.

Discovery from another lawsuit revealed that Sendwell "used" at least 27 of the 33 domain names contained in the links sent to Champion. Id., ¶¶ 12, 16. Plaintiff, who had never provided his phone number to Defendant or given it permission to contact him, alleges that it used an automated system that randomly or sequentially generated his number to send the texts. Id., ¶ 18. Champion also alleges that he is not Sendwell's only victim. Id., ¶¶ 19, 27. He seeks to represent three classes of people who also received text messages from Sendwell in this litigation, and he prays for statutory damages and injunctive relief under the TCPA. Id., ¶¶ 4, 26, 31, 36, 40, 44.

**II.    Legal Standard**

Because Defendant moves to dismiss for lack of standing, this Court will apply the standards of Federal Rule of Civil Procedure 12(b)(1). Under that rule, a plaintiff must show that a court has subject-matter jurisdiction to hear his claim. See Lujan v. Defenders of Wildlife, 504 U.S. 555, 561 (1992); US Ecology, Inc. v. U.S. Dep't of Interior, 231 F.3d 20, 24 (D.C. Cir. 2000). "Absent subject matter jurisdiction over a case, the court must dismiss [the claim]." Bell v. U.S. Dep't of Health & Hum. Servs., 67 F. Supp. 3d 320, 322 (D.D.C. 2014). "A Rule

12(b)(1) motion imposes on the court an affirmative obligation to ensure that it is acting within the scope of its jurisdictional authority." Grand Lodge of the Fraternal Order of Police v. Ashcroft, 185 F. Supp. 2d 9, 13 (D.D.C. 2001).  For this reason, "'the [p]laintiff's factual allegations in the complaint . . . will bear closer scrutiny in resolving a 12(b)(1) motion' than in resolving a 12(b)(6) motion for failure to state a claim." Id. at 13–14 (quoting 5A Charles A. Wright & Arthur R. Miller, Fed. Practice & Procedure § 1350 (2d ed. 1987)) (alteration in original).  Courts nonetheless treat the complaint's factual allegations as true and grant the plaintiff the benefit of all reasonable inferences.  See Jerome Stevens Pharms., Inc. v. FDA, 402 F.3d 1249, 1253 (D.C. Cir. 2005).

**III.    Analysis**

The Telephone Consumer Protection Act grants statutory damages to the recipients of certain telemarketing calls and texts in which the initiator fails to identify himself and the entity on whose behalf the communications are made.  See 47 U.S.C. § 227(c)(5); 47 C.F.R. § 64.1200(d)(4).  The Act also provides private rights of action to those who receive unsolicited advertising phone calls or texts from automated dialing machines, see 47 U.S.C. § 227(b)(1)(A)(iii), (b)(3), and those who are on a do-not-call registry and receive more than one telemarketing call from the same entity within a year.  See id. § 227(c)(5); 47 C.F.R. § 64.1200(c)(2).  Congress, however, "cannot . . . statutorily grant[] the right to sue to a plaintiff who would not otherwise have standing," Spokeo, Inc. v. Robins, 578 U.S. 330, 339 (2016) (citation omitted), so a TCPA plaintiff must also meet the standing requirements of Article III of the Constitution.  This means that a plaintiff must show that she "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." Id. at 338.  A "deficiency on any one of the three

prongs suffices to defeat standing." US Ecology, 231 F.3d at 24.  The Court will run through each element of standing although Defendant challenges only Champion's ability to meet the first.

Sendwell contends that "Champion's allegations do not rise above a bare statutory violation divorced from an actual injury in fact." ECF No. 5 (MTD) at 8.  In other words, his injury — *i.e.*, Champion's receipt of what Defendant categorizes as merely "a few" messages — is insufficiently concrete. Id. at 6.  There are some holes in this argument.

A statutory violation may create standing where "plaintiffs have identified a close historical or common-law analogue for their asserted injury." TransUnion LLC v. Ramirez, 594 U.S. 413, 424 (2021).  "An 'exact duplicate in American history and tradition' is unnecessary, and courts 'must afford due respect to Congress's decision to impose a statutory prohibition or obligation on a defendant.'" Doe 1 v. Apple Inc., 96 F.4th 403, 411 (D.C. Cir. 2024) (quoting TransUnion, 594 U.S. at 425).  Eight Circuits have addressed whether receipt of unwanted text messages is sufficiently analogous to the harm suffered by the victim of a tort recognized at common law.  See ECF No. 6 (Pl. Response to MTD) at 2.  All eight "have held that receiving either one or two unwanted texts or phone calls resembles the kind of harm associated with intrusion upon seclusion." Drazen v. Pinto, 74 F.4th 1336, 1344 (11th Cir. 2023) (*en banc*) (listing cases from seven sister circuits and joining them in their conclusion); see also Dickson v. Direct Energy, LP, 69 F.4th 338, 348 (6th Cir. 2023) (holding one ringless voicemail "bears a sufficiently close relationship to the traditional common law tort of intrusion upon seclusion").

Given that Champion alleges that the texts were a nuisance and an annoyance, see Compl., ¶ 20, he has met his burden of showing injury-in-fact.  As a related note, all 31 text messages are at issue, notwithstanding Defendant's erroneous contention that some of them fall

outside of the statute of limitations. See Compl., ¶ 12 (setting out dates of texts within four-year statute of limitations under 28 U.S.C. § 1658); Sawyer v. Atlas Heating & Sheet Metal Works, Inc., 642 F.3d 560, 561 (7th Cir. 2011) (applying § 1658 to TCPA claims).

Plaintiff's position is particularly strong here since, as he points out, the (non-binding) authorities upon which Defendant's argument principally rests have been overruled. See Response to MTD at 2. Relying on Dickson v. Direct Energy, LP, 2022 WL 889207 (N.D. Ohio Mar. 25, 2022), and Salcedo v. Hanna, 936 F.3d 1162 (11th Cir. 2019), Sendwell contends that Champion's injuries, like others stemming from "a few isolated text messages[,]" are insufficient to confer standing. See MTD at 6–7. The Eleventh Circuit, however, overturned Salcedo a year later in Drazen, see 74 F.4th at 1346 (stating that "the receipt of an unwanted text message causes a concrete injury"), and the Sixth Circuit similarly reversed Dickson. See 69 F.4th at 350. The Court expects more from the defense than this shoddy effort.

Champion has met his burden on the remaining two elements of standing as well. As for traceability, Article III demands less than proximate cause; the injuries must merely be fairly traceable to the defendant. Attias v. Carefirst, Inc., 865 F.3d 620, 629 (D.C. Cir. 2017). The Court can fairly trace Champion's injuries back to Sendwell through its alleged use of nearly all the domain names contained in the URLs sent to him.

As for redressability, the test "examines whether the relief sought, assuming that the court chooses to grant it, will likely alleviate the particularized injury alleged by the plaintiff." Fla. Audubon Soc'y v. Bentsen, 94 F.3d 658, 663–64 (D.C. Cir. 1996). Champion seeks injunctive relief that would garner him peace and quiet. See Compl., ¶¶ 3–4. Such relief plus damages would redress his injuries.

**IV.    Conclusion**

For the foregoing reasons, the Court will deny Sendwell's Motion to Dismiss.  A separate Order so stating will issue this day.

/s/ *James E. Boasberg*
JAMES E. BOASBERG
Chief Judge

Date:  June 21, 2024